## NORTH POINT CONSOLIDATED IRRIGATION COMPANY, RESPONDENT, *v.* THE UTAH AND SALT LAKE CANAL COMPANY ET AL., APPELLANTS.

APPEAL—ORDER FOR INJUNCTION PENDENTE LITE—FINALITY—CONSTITUTIONAL LAW—VESTED RIGHTS.

1. In an action to restrain defendant from discharging certain waters upon the lands of plaintiff, the district court granted an injunction *pendente lite*. Defendant appealed from the order granting the injunction, and respondent moved to dismiss the appeal on the ground that it was not a final judgment, and therefore not warranted by the constitution. *Held*, that the terms, "in other cases the supreme court shall have appellate jurisdiction only," as used in section 4, art. 8, Const., has reference to appeals from all final judgments of the district court as used in section 9, art. 8, Const., and no other.

2. A final judgment is a judgment that disposes of the case as to all parties, and finally disposes of the subject-matter of the litigation on the merits of the case.

3. While there is no express declaration that appeals will not lie from judgments other than final judgments, yet the court

holds that the affirmative declaration, as used in the section, that "from all final judgments of the district court there shall be a right of appeal to the supreme court," in connection with the language used as to other appeals, manifests the intent of the framers of the constitution to except from the appellate jurisdiction of the supreme court appeals from the district courts other than appeals from final judgments. This intention and interpretation is founded on the manifest intent of the framers of the constitution in framing section 9, and upon the general rules of construction.

4. The expression of one thing in the constitution or statute usually implies the necessary exclusion of things not expressed, and the people, in framing section 9, intended to deny the right of appeal to the supreme court in all other cases, although no express term of negation was used, and so much of subdivision 3, § 3635, Comp. Laws Utah 1888, authorizing appeals from orders granting an injunction, is abrogated and annulled by section 9, art. 8, Const.

5. The policy of the law of the several states and of the United States is to prevent unnecessary appeals. The interests of litigants require that appeals shall not prematurely be brought to the appellate court by piecemeal, and the litigants harassed by useless expense and delay of their rights. A party against whom an interlocutory order is made can have all his wrongs redressed and his rights protected by an appeal from a final judgment, where all the alleged errors may be reviewed at one hearing in the supreme court.

6. An appeal from an order *pendente lite* is not an appeal from a final judgment.

7. A citizen has no vested right in statutory provisions and exemptions. A statutory right to have cases reviewed on appeal may be taken away by a repeal of the statute, even as to cases which have been previously appealed. The constitution has taken away the right of appeal from an interlocutory order granting a temporary injunction.

(No. 740.   Decided Oct. 29, 1896.)

Appeal from the Third judicial district court.   Hon. John A. Street, *Judge.*

Action by the North Point Consolidated Irrigation Company against the Utah and Salt Lake Canal Company and others. From an order granting a temporary injunction, defendants appeal. Motion to dismiss for want of jurisdiction. *Granted.*

*Richards & Richards,* for appellants:

On a motion for a re-hearing, appellants filed the brief from which the following is taken:

RULES FOR THE CONSTRUCTION OF STATE CONSTITUTIONS.

The legislature of a state has jurisdiction on all subjects on which its legislation is not prohibited by the constitution. Its powers are inherent, not being derived from the constitution, but restricted by it. Black on Interpretation of Laws, p. 25; Black's Constitutional Law, 260; *Weister* v. *Hade,* 52 Pa. St. 474; Endlich on Interpretation of Statutes, sec. 535.

A state constitution should be liberally construed on broad general lines and not interpreted on narrow or technical principles. Black on Interpretation of Laws, p. 14; Story on the Constitution, sec. 413; Cooley's Constitutional Limitations, sec. 59; Sutherland on Statutory Construction, sec. 248-49-50.

In case of ambiguity, the whole constitution is to be examined in order to determine the meaning of any part, and the construction must give effect to the entire instrument. Black on Interpretation of Laws, p. 17; Cooley's Constitutional Limitations, sec. 58; Sutherland on Statutory Construction, sec. 239.

The constitution must be construed in the light of the statute and common law previously existing in the state. There is always a presumption against an unnecessary change of laws, and when the constitution makes a

change it is not to be extended by construction beyond the terms of the constitution. Black on Interpretation of Laws, pp. 19-110; Cooley's Constitutional Limitations, sec. 61; *Brown* v. *Fifield,* 4 Mich. 322; *Costigan* v. *Bond,* 65 Md. 122; Endlich on Interpretation of Statutes, sec. 520; Sutherland on Statutory Construction, secs. 290, 400.

The maxim, *"expressio unius est exclusio alterius,"* is not an universal rule. "The true rule is, in order to ascertain how far an affirmative or negative provision includes or implies others, that we must look to the nature of the provision, the subject matter, the objects, and the scope of the instrument." Potter's Dwarris on Statutes and Constitutions, pp. 674-5; Story on the Constitution, sec. 488-9, 453; *Cohens* v. *Virginia,* 6 Wheat. 401; Federalist No. 83; Endlich on Interpretation of Statutes, sec. 533; Sutherland on Statutory Construction, sec. 325.

The natural import of a single clause, is not to be narrowed so as to exclude implied powers resulting from its character, simply because there is another clause which enumerates certain powers within its scope. It cannot be assumed that the affirmative specification excludes all other implications. Story on the Constitution, sec. 449; Potter's Dwarris on Statutes and Constitutions, p. 675.

"It is a familiar rule that a statute in contravention or derogation of the common law ought not to be extended by construction. And there is always a presumption against an unnecessary change of laws. Accordingly it has been held that when a new constitution makes a change in the pre-existing law, whether common law or statutory, the change is not to be extended by construction beyond *the very terms of the constitution."* Black on Interpretation of Laws, p. 19; Black on Interpretation of Laws, p. 110.

The respondent seems to rely entirely upon the maxim, *expressio unius est exclusio alterius,* and claims that the

enumeration in section 9, article VIII, excludes jurisdiction in all other cases. The only authorities cited by respondent are the cases of the *United States* v. *Arredondo*, 6 Peters 725, and *Ex Parte* Attorney General, 1 Cal. 85. Neither of these cases is in point. In the case first cited, while construing an act of congress, the court declared that this is an universal maxim *in the construction of statutes. But the rule is not universal in the construction of constitutions.* In the California case the court refused to take original jurisdiction in a case requiring a jury, and held that the constitution did not contemplate the exercise of such jurisdiction by the highest appellate court of the state. *The true rule is, in order to ascertain how far our affirmative or negative provision includes or implies others, that we must look to the nature of the provision, the subject matter, the objects, and the scope of the instrument. These, and these only, can properly determine the rule of construction."* Story on the Constitution, sec. 448; Endlich on Interpretation of Statutes, sec. 507.

*Loofbourow & Kahn, E. W. Taylor,* and *John M. Zane,* for respondent.

No brief was filed on motion for rehearing.

MINER, J.:

Plaintiff filed its complaint, and obtained an order to show cause why an injunction should not be issued against the defendants restraining them from longer discharging the waste and befouled waters of a certain artificial drain ditch from Decker's Lake into the surplus water canal, and in and upon the lands of the plaintiff. Upon a hearing of this order for temporary injunction the court granted an injunction *pendente lite,* and on the 8th day of June, 1896, the defendants appealed from the order granting such injunction. Respondent now moves

to dismiss the appeal, on the ground that no appeal lies to this court from an order granting an injunction *pendente lite*, and for the further reason that such order is not a final judgment under section 9, article 8, of the constitution of this state, and that no appeal lies except from a final judgment.

Section 4 of article 8 of the constitution of this state reads as follows: "The supreme court shall have original jurisdiction to issue writs of *mandamus, certiorari,* prohibition, *quo warranto,* and *habeas corpus.* Each of the justices shall have power to issue writs of *habeas corpus,* to any part of the state, upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself or the supreme court, or before any district court or judge thereof in the state. In other cases the supreme court shall have appellate jurisdiction only, and power to issue writs necessary and proper for the exercise of that jurisdiction. The supreme court shall hold at least three terms every year, and shall sit at the capital of the state." Section 9 of article 8 reads as follows: "From all final judgments of the district courts there shall be a right of appeal to the supreme court. The appeal shall be upon the record made in the court below, and under such regulation as may be provided by law. In equity cases the appeal may be on questions of both law and fact; in cases at law the appeal shall be on questions of law alone. Appeals shall also lie from the final orders and decrees of the court in the administration of decedent estates, and in cases of guardianship, as shall be provided by law. Appeals shall also lie from the final judgment of justices of the peace in civil and criminal cases to the district courts on both questions of law and fact, with such limitations and restrictions as shall be provided by law; and the decision of the district courts on such appeals shall be final, except

in cases involving the validity or constitutionality of a statute."

Under section 4, the supreme court is given original jurisdiction to issue writs of *mandamus, certiorari,* prohibition, *quo warranto,* and *habeas corpus.* In these cases named it is clear the supreme court has original jurisdiction. This language follows: "In other cases the supreme court shall have appellate jurisdiction only, and power to issue writs necessary and proper for the exercise of that jurisdiction." The question, in what other cases has the supreme court appellate jurisdiction? is answered by section 9: "From all final judgments of the district courts there shall be a right of appeal to the supreme court. Appeals shall also lie from the final orders and decrees of the court in the administration of decedent estates, and in cases of guardianship, as shall be provided by law. Appeals shall also lie from the final judgments of justices of the peace in civil and criminal cases, to the district court on both questions of law and fact, with such limitations and restrictions as shall be provided by law; and the decision of the district court on such appeal shall be final, except in cases involving the validity or constitutionality of a statute." The term in "other cases" cannot mean in all other cases, because, as is seen in section 9, the decision of the district court is made final and conclusive in appeals thereto from justices of the peace, except in stated cases. The legislature is given power to provide by law concerning appeals in probate cases, but no such power is conferred upon the legislature concerning final appeals from the district court. It is clear that the "other cases" referred to in section 4 has reference to those appeals from final judgments referred to in section 9, and no other.

This brings us to the further consideration of section 9.

14 UTAH—11

Whether this court has jurisdiction of this appeal depends upon the construction given that section. If the constitution gives a mere guaranty of the right of appeal from final judgments of the district courts, the power is reserved in the legislature to give a right of appeal in other cases. But, if the constitution gives not only a guaranty of the right to appeal from final judgments, but by implication a denial of the right of appeal in other cases, then the court has no jurisdiction of the appeal in this case. "A constitution is not to be interpreted on narrow or technical principles, but liberally, and on broad, general lines, in order that it may accomplish the object of its establishment, and carry out the great principles of the government. The words are not to be stretched beyond their fair sense, but within that range the rule of interpretation must be taken which best follows out the apparent intention of its framers." Black, Interp. Laws, p. 13. "One part may qualify another so as to restrict its operation or apply it otherwise than the natural construction would require if it stood alone by itself. But one part is not to be allowed to defeat another if by any reasonable construction the two can be made to stand together. In interpreting clauses we must presume that words have been employed in their natural and ordinary meaning." Cooley, Const. Lim., p. 72. "Under every constitution the doctrine of implication must be resorted to in order to carry out the general grants of power. So every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision, as strongly as if a negative was expressed in every sentence." That which is implied by statute is as much a part of it as what is expressed. Id., pp. 78-105; Suth. St. Const. § 334. The maxim, "*Expressio unius est exclusio alterius*," is usually

applied to determine the intention of the lawmaker where it is not otherwise expressed, and is applicable to constitutional or statutory provisions which grant originally a power or right. When a statute defining an offense designates but one class of persons as subject to its penalties, all other persons are deemed to be excluded. As a general rule, the expression of one thing in a constitution or statute excludes all others. So specific provisions, relating to particular subjects, must govern in relation to that subject, as against general provisions in other parts of the law which might otherwise be broad enough to include it. Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others, and the natural inference follows that it is not intended to be general. A national bank being granted the power to loan money on personal security, such banks are held precluded from loaning on real estate mortgages. Suth. St. Const. §§ 325-327; *Fowler* v. *Scully*, 72 Pa. St. 456.

The appellate jurisdiction of the federal supreme court is conferred by the constitution of the United States "with such exceptions, and under such regulations, as congress may make." Article 3, § 2. Therefore acts of congress affirming such jurisdiction have always been construed as excepting from it all cases not expressly described and provided for. *Ex parte McCardle,* 7 Wall. 506; *Durousseau* v. *U. S.,* 6 Cranch 312; Suth. St. Const. § 327. As explained in *Durousseau* v. *U. S.,* 6 Cranch 312, the court said: "Thus a writ of error to the judgment of a circuit court, where the matter in controversy exceeds the value of $2,000. There is no express declaration that it will not lie where the matter in controversy shall be of less value. But the court considers this affirmative description as manifesting the intent of the legislature to except from its appellate jurisdiction all cases decided in

the circuits where the matter in controversy is of less value, and implies negative words." So, as a general rule, an affirmative grant of power will imply an exclusion of all others. Potter's Dwar. St. pp. 674, 675. So, where technical words are used in a constitution, the technical meaning is to be applied to them, unless it is repelled by the context. 1 Story, Const. § 453. In construing constitutions, the doctrine that what is implied is as much a part of the instrument as what is expressed is a necessity by reason of the inherent inability to put all private power into words. *Rhode Island* v. *Massachusetts*, 12 Pet. 657; *Ex parte Yarbrough*, 110 U. S. 651.

Under the light of these general principles and decisions, what is the meaning of the term used in the constitution, "From all final judgments of the district courts, there shall be a right of appeal to the supreme court," when viewed in connection with the balance of the section? It will be noticed that the word "final," or "final judgment" is used in connection with appeals from the district courts, appeals from the probate courts, and appeals from justices' courts; while a right of appeal from all final judgments to the district court is expressly granted. Yet the same section expressly grants the right of appeal from the final orders and decrees of the court in decedents' estates, and limits the right of appeal from final judgments in justices' courts to the district courts. The word "final" or "final judgment" has a plain meaning. A judgment, to be final, must dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case. *Champ* v. *Kendrick*, (Ind. Sup.) 30 N. E. 635. Bouvier defines a final judgment as used in opposition to interlocutory as "A final judgment is a judgment which ends the controversy between the parties litigant." "The general rule recognized by the

courts of the United States and by the courts of most, if not all of the states, is that no judgment or decree will be regarded as final, within the meaning of the statutes in reference to appeals, unless all the issues of law and of fact necessary to be determined were determined, and the case completely disposed of, so far as the court had power to dispose of it." Freem. Judgm. § 34. If appeals can be taken from interlocutory orders and judgments not final, from the district court to the supreme court, it follows that for the same reason appeals may be taken from rulings and decisions not final, from a justice court to a district court, and from the district court to the supreme court. It would be just as reasonable to allow an appeal from an order overruling a demurrer or granting a motion for a new trial, before final judgment, from a justice of the peace, as to allow an appeal from an order granting a temporary injunction *pendente lite* from the district court to the supreme court. In neither case would the appeal be from a final judgment. Yet the constitution is as explicit in allowing appeals in one case from final judgments as in the other. In each the right of appeal is from a final judgment. If the intention was to guaranty the right of appeal from a final judgment, and confer upon the legislature implied power to authorize appeals in all other cases from the district courts, then the same guaranty with implied power is also retained, and to be applied to justices' courts as well as to courts in the administration of estates. It would be no answer to this that the legislature had previously conferred the power in the one case and withheld it in the other. If the power exists in the legislature, the right could be conferred upon justices' courts at any time. It is apparent that such an unfortunate construction or implication was not contemplated nor intended. It would be presuming too much to say that the framers of the constitution were fearful

that the legislature would enact laws preventing appeals from final judgments, and that, therefore, this provision was inserted, giving a guaranty of the right of appeal from such judgments, thus leaving to the legislature the right to enact laws allowing appeals from interlocutory orders. Especially is this so when we consider the fact that nearly every state in the Union allows appeals from final judgment, and restricts or prohibits appeals from interlocutory orders as being against the policy of the law. The framers of the constitution could not have anticipated that the legislature would do an unreasonable thing, and thus take away the right of appeal from a final judgment, when that right has grown to be almost inherent, and yet use words sufficient to authorize it to do that which in most states is considered questionable, and by eminent law writers to be against the policy of the law.

In granting the right of appeal from all final judgments the people intended to grant the right of appeal from all final judgments only. The supreme court, being a creature of the constitution, has only such powers as are therein conferred upon it. The only jurisdiction that is conferred by the constitution upon the supreme court in appeal cases is appeals from final judgments. There is no express declaration that appeals will not lie from judgments other than final judgments. But the court considers the affirmative declaration, as used in the section, that "from all final judgments of the district court, there shall be a right of appeal to the supreme court," as manifesting the intent of the framers of the constitution to except from the appellate jurisdiction of the supreme court appeals from the district courts, other than appeals from final judgments. This intention and implication is founded on the manifest intent of the framers of the constitution, and upon the general rules of construction that the expression of one

thing in the constitution implies the necessary exclusion of things not expressed. We are of the opinion that when the framers of section 9 used the terms "from all final judgments of the district court there shall be a right of appeal to the supreme court," they intended to deny the right of appeal to the supreme court in all other cases, although no express terms of negation were used, and that so much of subdivision 3 of section 3635, Comp. Laws Utah 1888, authorizing appeals from orders granting an injunction, is abrogated and annulled by this section of the constitution. *Durousseau* v. *U. S.*, 6 Cranch 307; *Ex parte Attorney General*, 1 Cal. 85; *Ex parte McCardie*, 7 Wall. 506; *U. S.* v. *Arredondo*, 6 Pet. 723; 725; Suth. St. Const. §§ 325-327; *Fowler* v. *Scully*, 72 Pa. St. 456; Cooley, Const. Lim. pp. 78-105; Story, Const. §§ 413-453; *State* v. *Hallock*, 14 Nev. 202; *Ex parte Vallandigham*, 1 Wall. 251; *Railroad Co.* v. *Grant*, 98 U. S. 401; *Page* v. *Allen*, 58 Pa. St. 338; *Barry* v. *Mercein*, 5 How. 103; Potter's Dwar. St. 674, 675.

The policy of the laws of the several states and of the United States is to prevent unnecessary appeals. It is not the policy of courts to review cases by piecemeal. The interests of litigants require that cases shall not be prematurely brought to the highest court. The errors complained of may be corrected in the court in which they originated; or the party injured by them might, notwithstanding the injury, have final judgment in his favor. If a judgment interlocutory in its nature were the subject of appeal, each of such judgments rendered in the case could be brought before the appellate court, and litigants harassed by useless delay and expense, and the courts burdened with unnecessary labor. Freem. Judgm. § 33. The reason of the rule is obvious. A party against whom an interlocutory order is made may have all his wrongs redressed and his rights protected upon a final hearing,

·and therefore he has no ground of complaint. If these rights are not protected on a final hearing in the trial court, the error can be corrected on appeal from the final judgment.

We conclude that an appeal from an order *pendente lite* granting a temporary injunction is not an appeal from a final judgment, and that such an order is not a final judgment, from which an appeal will lie to this court, under section 8 of the constitution. *Artman* v. *Manufacturing Co.* (Neb.) 20 N. W. 873; *Baker* v. *White,* 92 U. S. 176; *Telegraph Co.* v. *Locke,* (Ind. Sup.) 7 N. E. 579; *Hume* v. *Bowie,* 148 U. S. 245; Freem. Judgm. § 34; *Bank* v. *Jenkins,* 109 Ill. 219; *Bostwick* v. *Brinkerhoff,* 106 U. S. 3; *Hill* v. *Railroad Co.,* 140 U. S. 52. See *Stewart* v. *Masterson,* 131 U. S. 151; *Walker* v. *Oliver,* 63 Ill. 200; *Brown* v. *Edgerton* (Neb.) 16 N. W. 474; *Tinly* v. *Martin,* 80 Ky. 463; *Truett* v. *Rains,* 17 S. C. 451; *Ray* v. *Northrup,* 55 Wis. 396; *Bolles* v. *Stockman,* 42 Ohio St. 445; *Dows* v. *Congdon,* 28 N. Y. 122.

It is contended that the appellants' right of appeal is guarantied under the statute. A citizen has no vested right in statutory provisions and exemptions. A statutory right to have cases reviewed on appeal may be taken away by a repeal of the statute, even as to cases which have been previously appealed. In this case the constitution has taken away the right of appeal from an interlocutory order granting the temporary injunction appealed from. Cooley, Const. Lim. pp. 471-473; *Railroad Co.* v. *Grant,* 98 U. S. 398; *Ex parte McCardle,* 7 Wall. 506. The appeal from the order granting the injunction is dismissed, with costs.

ZANE, C. J., concurs. BARTCH, J., disqualified to sit in the case.