

# The Attorney General of Texas

December 19, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

1824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

'23 Main, Suite 610
Houston, TX. 77002
713/228-0701

106 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

00 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Chet Brooks
Chairman
Senate Committee on Human Resources
State Capitol
Austin, Texas 78711

Opinion No. H- 1295

Re: Authority of a nurse prac-
titioner to perform services
under indirect physician super-
vision.

Dear Senator Brooks:

You ask several questions about the health care services which an advanced nurse practitioner may provide. Your request is prompted by the enactment of P. L. 95-210, the Rural Health Clinic Services Act, 91 Stat. 1485 (codified in scattered sections of 42 U.S.C. §§ 1395-1396i), which permits medicare and medicaid reimbursement for services rendered by physicians' assistants and nurse practitioners who operate under indirect physician supervision.

You first ask whether an advanced nurse practitioner, defined by the State Board of Nurse Examiners as "a professional nurse, currently licensed in the State of Texas . . . [with] knowledge and skills obtained through an advanced educational program accredited by the Board," may perform the following services outside the physicial presence of a supervising physician:

    a. Take a patient's medical history
    b. Perform a physical examination
    c. Do an assessment of health status
    d. Identify deviations in health status
    e. Institute a physician's order for certain simple
    laboratory tests such as chemical examinations of
    urine or blood

The Board of Nurse Examiners establishes standards for programs which prepare professional nurse practitioners and other professional nurses. V.T.C.S. art. 4518, § 1. It licenses persons who practice "professional nursing," defined as follows

the performance for compensation of any nursing act
(a) in the observation, care and counsel of the ill,
injured or infirm; (b) in the maintenance of health or

p. 5105

> prevention of illness of others; (c) in the administration of medications or treatments as prescribed by a licensed physician or dentist; (d) in the supervision or teaching of nursing, insofar as any of the above acts require substantial specialized judgment and skill and insofar as the proper performance of any of the above acts is based upon knowledge and application of the principles of biological, physical and social science as acquired by a completed course in an approved school of professional nursing. The foregoing shall not be deemed to include acts of medical diagnosis or prescription of therapeutic or corrective measures.

V.T.C.S. art. 4518, § 5. Thus, "nursing acts" include general categories of services requiring specialized skill and knowledge acquired in an approved nursing course. The specific nursing acts an individual may perform will therefore depend in part upon his skill and educational background. See Attorney General Opinion H-896 (1976) (Board of Nurse Examiners may accredit specialty programs in nursing offered by colleges and universities). The board has approved educational programs to prepare advanced nurse practitioners and has developed guidelines for their practice. Board of Nurse Examiners, Guidelines for Advanced Nurse Practitioners in Expanding Roles, September, 1978.

Advanced nurse practitioners, and other persons, may not practice medicine unless also licensed by the Texas Board of Medical Examiners. V.T.C.S. art. 4498; see V.T.C.S. art. 4504a (medical licensing provisions inapplicable to "nurses who practice nursing only"). A person practices medicine if he diagnoses, treats, or offers to treat or cure any disease, disorder, physical deformity or injury and charges therefor. V.T.C.S. arts. 4510-4510a. Since "there is some overlapping of function between those defined as practicing 'professional nursing' and those defined as practicing medicine," Attorney General Opinion H-27 (1973), it may be difficult to characterize particular health services. In addition, rules promulgated by the Board of Medical Examiners allow a physician to delegate some functions to a physician's assistant or other unlicensed technician, assistant, or employee. Rule 386.01.13001 (issued January 8, 1976). The physician must retain supervision and control of the technician, assistant or employee. Id.

Professional nursing includes acts in the observation of the ill and the maintenance of health. The statute does not expressly require direct or on-site supervision by a physician. Compare V.T.C.S. art. 4512e, § 6 (physical therapist licensing act does not apply to hospital employee working under direct supervision of a physician); art. 4528 (nurses licensing law does not apply to acts done under control, supervision or at instruction of licensed physician); art. 8451a, § 31(c) (beauty culture school must be under direct supervision of licensed instructor). See Bizzelle v. State, 116 S.W.2d 385 (Tex. Crim. App. 1938); Attorney General Opinions H-395, H-368 (1974) (defining "direct supervision"). Professional nurses may also

administer medications and treatments on a physician's prescription, again without any statutory requirement of direct supervision by the physician. The physician may, however, have a common law duty to provide instructions, depending on the nurse's degree of skill. Annot., 63 A.L.R.3d 1020 (1975). In a particular case, in person instruction may be necessary. When a physician delegates a medical function to a nurse or other nonphysician, he must exercise supervision and control. Board of Medical Examiner's Rule 386.01.13001. See Thompson v. Texas State Board of Medical Examiners, 570 S.W.2d 123 (Tex. Civ. App. — Tyler 1978) (physician may not use unlicensed person to perform acupuncture because he lacks knowledge to supervise); McKinney v. Tromly, 386 S.W.2d 564 (Tex. Civ. App. — Tyler 1964, writ ref'd n.r.e.) (administration of anaesthetic by nurse under physician's control was practice of medicine by the physician). The adequacy of instruction, supervision, or control in particular cases involves fact questions which we cannot resolve in the opinion process. However, the nurse practitioner's advanced training would operate in favor of decreased instruction as to nursing acts and decreased supervision as to delegated medical functions.

If an advanced nurse practitioner, educated in these procedures, takes a medical history or performs a physical exam, he is engaging in acts of observation or health maintenance within article 4518, sections 5(a) and (b). We do not believe the practitioner thereby necessarily engages in medical diagnosis prohibited by articles 4510-4510b. We also believe that advanced nurse practitioners may note health status and deviations from normal health as acts in the observation of the ill or maintenance of health. The guidelines issued by the Board of Nurse Examiners authorize them to provide these services within the limits of their educational preparation. However, an assessment which identifies a disease as the source of abnormal symptoms would in our opinion constitute medical diagnosis. It would therefore not be a nursing act but a medical function.

We also believe a nurse may perform simple laboratory tests under a physician's orders. Such tests may be characterized as acts to maintain health, within article 4518, section 5(b). They may also constitute the initial stage of treatment, see Provident Life and Accident Insurance Co. v. Hutson, 305 S.W.2d 837 (Tex. Civ. App. — Beaumont 1957, writ ref'd n.r.e.), which article 4518, section 5(c) permits a nurse to administer as prescribed by a physician. Of course, a nurse should not diagnose an illness from the tests, but report the results to a physician for diagnosis. Attorney General Opinion WW-1511 (1962) stated that the laboratory tests are an integral part of diagnosis, and must therefore be performed under the direct control and supervision of a licensed physician. The opinion did not consider the authority of a professional nurse to perform laboratory tests, and section 5 of article 4518 defining professional nursing had not yet been enacted. See Acts 1967, 60th Leg., ch. 665, at 1759. We do not believe the conclusion of WW-1511 applies in the present case. See also Attorney General Opinion WW-1045 (1961) (performance of laboratory tests does not constitute the practice of medicine).

There is no statutory requirement that any of the five services you inquire about be performed in the presence of a supervising physician. As already noted, the appropriate kind of instruction depends on the facts of each case.

You next ask whether a nurse practitioner who initiates written protocols developed by a physician in conformance with the federal regulations promulgated under P. L. 95-210 will be acting under adequate physician supervision if the physician is not physically present at all times, provided that he is available for consultation and referrals, monitors, evaluates, and directs all work performed, and is available at all times by telecommunications. The protocols you refer to are described in the regulations as patient care policies. The clinic's health care services are furnished in accordance with these policies which include

> Guidelines for the medical management of health problems which include the conditions requiring medical consultation and/or patient referral, the maintenance of health care records, and procedures for the periodic review and evaluation of the services furnished by the clinic.

43 Fed. Reg. 30529 (1978) (to be codified at 42 C.F.R. § 481.9(b)(3)(ii)).

The answer to your question depends on whether the particular protocol covers a nursing or medical function. If it covers a nursing function, for example the observation and health maintenance acts inquired about in your first question, a nurse may provide it without any statutory requirement of direct supervision by a physician, although the physician must provide adequate instruction. If the protocol delegates a medical function, the physician must supervise and control the agent's performance. In addition, the medical function must be delegable. See Thompson v. Texas State Board of Medical Examiners, supra. The questions as to whether a protocol covers nursing acts or medical functions, whether the medical function is delegable, and whether adequate supervision is provided are fact questions.

You finally ask whether any provision of Texas law would prohibit a nurse practitioner from providing medications to patients under standing and/or written orders. Your inquiry does not list any specific medication or order, so our answer is necessarily in general terms. We do not address whether some medication or orders might be of such a nature that they would provide an exception to the general rule. Article 4518, section 5 permits a nurse to administer medications as prescribed by a licensed physician, but expressly does not permit a nurse to prescribe therapeutic measures. To "prescribe" is defined by Webster's Third International Dictionary as "to direct, designate, or order the use of as a remedy." See also Colgrove v. U.S., 176 F.2d 614 (9th Cir. 1949). We believe the statutory language implies that a physician is to decide that medication is needed. We believe our courts would probably hold that the provision of medication pursuant to standing orders, without a physician's prescription for the individual patient, would constitute the practice of medicine and not a nursing act.

## S U M M A R Y

Advanced nurse practitioners may take a patient's medical history, examine him, assess health status and identify deviations from normal health and institute a physician's order for certain simple laboratory tests without the supervising physician being physically present. Whether a nurse may initiate written policies for health care when the physician is not present depends on the particular function covered by the policy. A nurse practitioner may not generally provide medications to patients under standing and/or written orders unless the physician has prescribed for the individual patient.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn