727 P.2d 352

The **COLUMBIA GROUP, INC.**, an Arizona corporation; Columbia Building Materials, Inc., an Arizona corporation; Columbia Sand & Gravel Company, Inc., an Arizona corporation, Plaintiffs/Appellants,

v.

**HOMEOWNERS ASSOCIATION OF FINISTERRA, INC.**, an Arizona corporation; Commonwealth Land Title Agency of Tucson, Inc., an Arizona corporation as Trustee Under Trust No. 10,005 and Trust No. 10,006 a.k.a. Fidelity National Title Agency, Inc., an Arizona corporation; D.F. Fraker Design & Building Corporation, an Arizona corporation; Darion Development, an Arizona business association; Catalina Concrete Contracting Company, Inc., an Arizona corporation; Coldwell Banker and Company, an Arizona corporation; Alstem Holdings, Ltd., a Canadian corporation; Rocklin Management, Ltd., a Canadian corporation; Patricia Investments, Ltd., a Canadian corporation; Stewart Block and Brick Company, Inc., an Arizona corporation; Margaret Elaine Stewart as Vice President of Stewart Block and Brick Company, Inc.; Catalina Masonry, Inc., an Arizona corporation; Danco, Inc., an Arizona corporation; Fireman's Fund Insurance Company, a foreign corporation, Defendants/Appellees.

No. 2 CA–CIV 5612.

Court of Appeals of Arizona, Division 2, Department A.

May 1, 1986.

Reconsideration Denied June 10, 1986.

Review Denied Oct. 15, 1986.

Freeman & Mance, P.C. by Michael B. Mance, Tucson, for plaintiffs/appellants.

Schorr, Eldridge & Bangs, P.C. by Franklin O. Eldridge, and Leonard, Felker & Parrish, P.C. by Clifford B. Altfeld, Tucson, for defendants/appellees.

OPINION

FERNANDEZ, Judge.

Appellants Columbia Group, Inc., and two of its subsidiaries, Columbia Building Materials, Inc., and Columbia Sand & Grav-

el Co., Inc. (hereafter "Columbia"), sought foreclosure of a materialman's lien, and damages for breach of contract and unjust enrichment against numerous defendants. The action was tried to the court with an advisory jury. At the conclusion of the evidence, the court entered a directed verdict in favor of all defendants. Columbia has appealed. We reverse and remand.

Darion Development ("Darion"), developed a subdivision called Finisterra in Pima County. Title to the subdivided lots was held by two trusts. The trusts deeded Common Areas A and B to the Homeowners Association of Finisterra, Inc. ("Homeowners"). Darion continued as the representative of the trusts and the Homeowners Association during the construction and development of three categories of improvements to the common areas.

The first category of improvements was the construction of the recreation center, an office building and a guard house. D.F. Fraker Design & Building Corp. ("Fraker") was the contractor for these improvements. Among the subcontractors used by Fraker on this and other Finisterra work was Catalina Concrete Contracting Co., Inc. ("Catalina"). Catalina obtained materials from Columbia. Fraker completed the guard house and separate office buildings more than 60 days prior to the filing of Columbia's lien. Columbia stipulated that it had been paid for the Fraker improvements.

The second category of improvements was construction of retaining walls, work performed by engineers and architects, and grading work. Darion contracted with Danco, Inc. ("Danco"), for the grading work and construction of the retaining walls. Danco subcontracted with Catalina Concrete for a portion of this work. Catalina Concrete used Columbia building materials on the job. An engineer's uncontradicted testimony was that only a small portion of two of the large concrete block retaining walls was situated on the liened property.

The third category consisted of improvements to the tennis courts, including bleachers and sidewalks. Darion contracted directly with Catalina Concrete for work performed in this category, and Columbia supplied some materials for the job.

Throughout the construction, Catalina Concrete had other jobs near Finisterra and, occasionally, Columbia's cement trucks which were headed for Finisterra were diverted to other Catalina projects.

On October 22, 1981, Columbia served two preliminary 20–day notices, both of which listed Fraker as the relevant general contractor and Catalina Concrete as the relevant contracting party. Those notices designated the legal description of the property as Common Areas A and B of Finisterra. The first notice was in the amount of $470.88 for block furnished at 5620 E. Paseo Del Fuente, which is the address of the guard house. The second notice was in the amount of $4,469.59 for sand and concrete furnished to Common Areas A and B of Finisterra. The amounts shown on the 20–day notices were taken from the two initial invoices Columbia sent to Catalina Concrete for work done under the Fraker contracts. Those amounts were not part of the amounts claimed at trial since Columbia stipulated it had been paid for the Fraker work. No attempt was made by Columbia to send an amended notice or to estimate the total of material anticipated to be provided to Finisterra.

The two preliminary notices were served on the construction lender and on the owners, Homeowners Association of Finisterra and both trusts. The proof of service also shows that service on the original or general contractor was made to D.F. Fraker and Darion Development.

On June 24, 1982, Columbia recorded a notice and claim of lien for $86,907.56 upon Common Areas A and B. The lien did not distinguish amounts for materials supplied to improvements on Common Area A from those supplied for Common Area B. The lien also did not specify the general contractor for whom the materials were supplied.

At trial Columbia failed to show where the materials were delivered or for which improvement they were delivered, or the

general contractor to whom the materials were supplied. There was also no evidence as to the dollar amount of materials supplied to any particular common area.

Columbia and Fraker settled their dispute before trial. Columbia was granted a $60,247.48 default judgment against Danco after trial as well as a $60,247.48 judgment against Catalina. A directed verdict was granted to the remaining defendants, Homeowners Association, Commonwealth Land Title Agency, Darion and Fireman's Fund Insurance Co. (appellees).

Columbia contends the court erred in finding the materialman's lien invalid, that it erred in its conclusions of law and that it erred in directing a verdict on the claim of unjust enrichment. We find the court was correct in directing a verdict on the claim of unjust enrichment but not in finding the preliminary notice invalid or in its conclusions of law. We reverse and remand.

## LIEN VALIDITY

Although the primary purpose of the materialmen's lien statutes is to protect those who furnish material for improvements, the statutes also serve to protect the property owner by requiring that he be given proper notice and an opportunity to protect himself. *James Weller, Inc. v. Hansen*, 21 Ariz.App. 217, 517 P.2d 1110 (1973). Materialmen's lien statutes are to be liberally construed and substantial compliance which is not inconsistent with the legislative purpose of the statutes is sufficient. *Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 561 P.2d 750 (App.1977); *Advanced Living Center v. T.J. Bettes Co. of California*, 11 Ariz.App. 336, 464 P.2d 656 (1970); *Peterman-Donnelly Engineers & Contractors Corp. v. First National Bank of Arizona*, 2 Ariz.App. 321, 408 P.2d 841 (1965).

Portions of the relevant mechanic's lien statutes, A.R.S. §§ 33–992.01 and 33–993, have been amended since Columbia's lien arose. The statutes in effect at the time Columbia perfected its lien govern its validity. *O'Malley Lumber Company v. Riley*, 126 Ariz. 167, 613 P.2d 629 (App.1980).

■ In finding the two preliminary 20–day notices defective, the court found that Darion was an agent of the owner, not an original contractor, pursuant to A.R.S. § 33–992.01(A)(3). It also found that Fraker and Danco were original contractors under A.R.S. § 33–992.01(A)(2). We find the court erred in making these findings. A.R.S. § 33–992.01(A) as it read between 1979 and 1983 (and as it reads today) stated:

"2. 'Original contractor' means any contractor who has a direct contractual relationship with the owner.

3. 'Owner' means the person, or his successor in interest, who causes a building, structure or improvement to be constructed, altered or repaired, whether the interest or estate of the person be in fee, as vendee under a contract to purchase, as lessee, or other interest or estate less than fee. Where such interest or estate is held by two or more persons as community property, joint tenants or tenants in common, any one or more of the persons may be deemed the owner."

Here, the evidence is clear that, prior to service of the preliminary notices, the two trusts had deeded the common areas of Finisterra to its Homeowners Association. There was evidence that Darion had control over all aspects of construction of the improvements on the common areas. Darion contracted with other entities, such as Fraker and Danco, for certain improvements, supervised the construction of some small projects directly, and was responsible for paying for all improvements. Darion was the only entity which contracted with Homeowners Association of Finisterra, the owner of the common areas. Therefore, only Darion was an original contractor required to be served with preliminary 20–day notice under A.R.S. § 33–992.01. This finding is limited to the materialman's lien statute only. Designation as an agent rather than as a contractor is not conclusive since it is the conduct of the parties that determines the relationship that exists. *Reidy v. Blackwell*, 140 Ariz. 333, 681 P.2d

**302**

916 (App.1983). In view of our finding, it was not necessary for Columbia to serve either Danco or Catalina Concrete in order to perfect a valid lien.

 The court found that, because of the variance between the amount shown in the preliminary notice and the total amount claimed at trial, the notice was defective. The statute in effect at the time permitted the amount of the claim to exceed the estimated amount in the preliminary notice. A.R.S. § 33–992.01(I) provided as follows:

> "If a notice contains a general description required by subsection B of the labor, materials, machinery, fixtures or tools furnished up to the date of notice, it is not defective because after such date the person giving notice furnishes labor, materials, machinery, fixtures or tools that are not within the scope of such general description, or exceed the estimated price thereof."

Although the statute has since been amended,[1] we must follow the statute that was applicable at the time. *O'Malley Lumber Co. v. Riley*, supra. In view of our finding, it is ordered that this matter be remanded for a new trial.

The remaining issues raised concern the sufficiency of the evidence and the exact locations where the furnished materials were used. It is clear that all materials used in the Fraker contract have been paid for and that the lien applies only to Common Areas A and B. These are factual issues that will have to be determined by the trier of fact on retrial.

### UNJUST ENRICHMENT THEORY

 Lastly, Columbia contends the court erred in directing a verdict on the unjust enrichment theory. We disagree. A materials supplier has no claim for unjust enrichment against the owner of the property. *Stratton v. Inspiration Consolidated Copper Co.*, 140 Ariz. 528, 683 P.2d 327

(App.1984). Here there were no assurances or representations made by the owners directly to Columbia, and the evidence fails to show any benefit they received for which they did not pay.

We do not find that the release of the Fireman's Fund bond renders this appeal moot as appellees contend.

Reversed and remanded for further proceedings in accordance with this opinion.

HATHAWAY, C.J., and HOWARD, P.J., concur.

---

**1.** With the 1983 amendment of A.R.S. § 33–992.-01(H), a supplier is now required to serve a supplemental notice on the owner if the "actual estimated total price ... exceeds by twenty per cent or more the total price in any prior ... notice," and subsection (I) allows a twenty per cent difference between the original estimate and any additional materials supplied after the date of the previous notice.